Leroy RHODAN, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

Civ. A. No. 2:88–2409–8.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 16, 1991.

Jay T. Gouldon, Charleston, S.C., for plaintiff.

John H. Douglas, Asst. U.S. Atty., Charleston, for defendant.

## ORDER

BLATT, Senior District Judge.

This matter is before the court on Defendant's Motion to Alter or Amend Judgment. The underlying suit, a medical malpractice action, was brought against the defendant, the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and was tried before the court without a jury on September 27, 1990.

The plaintiff, Leroy Rhodan, alleged that physicians at the Charleston Veterans Administration Hospital—(hereinafter, V.A. Hospital)—failed to properly treat him on November 16, 1986, for his psychiatric condition and as a result he suffered damages. This court found plaintiff's allegations to be true and entered judgment against the United States for the damages sustained by plaintiff.[1] This court found that the plaintiff had suffered damages to the date of trial in the amount of twenty-five thousand dollars, ($25,000.00), and that the plaintiff would suffer future damages in the amount of one hundred thousand dollars, ($100,000.00), over the 31.38 year period of his continued life-expectancy.[2]

■ Defendant now complains that the amount of future damages awarded is unsupported by the evidence and requests this court to alter or amend that portion of the judgment. The facts of the underlying suit, as previously found by this court, fully support the judgment as rendered.

"There is no market value for injured feelings. The value of money in compar-

---

1. The judgment was entered November 7, 1990.

2. Section 19–1–150 of the South Carolina Code (1976), provides a life expectancy table for es-

tablishing the life expectancy of any person from any period in his life when necessary in a civil action.

ison with the value of the normally self-satisfied state of mind of which a man may be deprived by a wrongful invasion of his rights, a trampling upon the sensitive tentacles of his personal dignity, a public aspersion upon his manhood, or by abusive treatment of any character, is a matter to which reasonable men may, and do, differ widely." *Currie v. Davis*, 130 S.C. 408, at 420, 126 S.E. 119 (1923).

As succinctly characterized in *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), awards for pain and suffering and mental anguish are highly "impressionistic". It is this court's impression that Mr. Rhodan's condition as a schizophrenic, paranoid type, makes him a more tender plaintiff than perhaps others would be in similar circumstances. Mr. Rhodan was stripped of his dignity, his trust was betrayed, and he was denied the very treatment he walked five miles to receive. Mr. Rhodan testified that he is afraid to seek treatment at the V.A. hospital unaccompanied for fear another incident will occur. Mrs. Rhodan testified that her husband talks about the incident weekly and that he continues to be disturbed by the occurrence.

█ To clarify any ambiguity in its previous order, this court did consider the propriety of applying a discount or inflation rate to an award for future pain and suffering and mental anguish, though neither defendant, nor plaintiff, offered any evidence at trial on the amount of damages, the method of calculation of damages, or the effect of inflation or investment on damages to be awarded. Furthermore, although this court is to be guided by state law principles in this tort action,[3] this court found no South Carolina case law which urges a particular method for calculation of, or a particular discount figure to be applied to, damage awards for future [4] pain and suffering and mental anguish. Without further guidance from South Carolina case law and with no offer of proof from either party, the matter of damages and the issue of present value for awards of future pain and suffering was left entirely to the discretion of the court.[5]

There is a split of authority on the issue of whether an award for future pain and suffering should be reduced to present value at all. The issue is amply discussed in the article at 22 Am.Jur.2d *Damages*, § 247 (1988). Those cases which support the reduction of an award for future pain and suffering do so on the theory that the time value of money should be considered in any award for losses which will occur in the future, but which are being compensated for today.[6] The contrary theory apparently rests on the logic that pain and suffering, whenever experienced, has no monetary equivalent.[7] There are numerous South Carolina cases which espouse the theory that damages for pain and suffering have no market price and cannot be deter-

---

**3.** "In claims brought under the Federal Tort Claims Act, damages are determined by the law of the state where the tortious act was committed ..." *Springer v. U.S.*, 641 F.Supp. 913 (D.S.C.1986) (citation omitted), *aff'd without op., Springer v. U.S.*, 819 F.2d 1139 (4th Cir.1987).

**4.** The past damage award is not subject to a discount or inflation rate adjustment. *Mosley v. U.S.*, 499 F.2d 1361, 1363 (4th Cir.1974) *citing, Brooks v. U.S.*, 273 F.Supp. 619, 633 (D.S.C. 1967).

**5.** South Carolina cases adhere to the theory that the assessment of unliquidated and indeterminate damages for injuries of the nature found herein cannot proceed by rule but must be left to the sound discretion of the trier of fact. *See e.g., Denaux v. U.S.*, 572 F.Supp. 659, 666 (D.S.C.

1983) *citing, Harper v. Bolton*, 239 S.C. 541, 124 S.E.2d 54 (1962).

**6.** *See e.g., Metz v. United Technologies Corp.*, 754 F.2d 63 (2d Cir.1985), and cases cited therein. In *Metz*, the court found that the exclusion of evidence on present value and the failure to instruct the jury on the present value of future pain and suffering was reversible error; but noted that on retrial the district court could consider relevant economic evidence and choose to offset discount and inflation rates, or have the jury find and apply an appropriate rate so long as the resulting award reflected the consideration of the time value of money. *Id.*, at 68.

**7.** *See e.g., Taylor v. Denver & Rio Grande W.R.R. Co.*, 438 F.2d 351, 352–53 (10th Cir.1971); Annot., 60 ALR2d 1357 § 5 (1958).

mined with exactitude.[8] The American Jurisprudence article cited above notes *Sweeney v. Car/Puter International Corp.*, 521 F.Supp. 276 (D.S.C.1981), as a case which holds that awards for future pain and suffering are to be discounted to present value under South Carolina law. However, the court in *Sweeney* relied on this court's decision in *Doyle v. U.S.*, 441 F.Supp. 701, 714 (D.S.C.1977), to support the reduction of an award for future pain and suffering to present value.

The *Doyle* case is a wrongful death action brought under the admiralty jurisdiction of the district court. Therein, this court, without explanation, reduced an award of damages for future pain and suffering to its present cash value by use of a discount rate found to be fair and reasonable by the court.

Later, in *Denaux v. U.S.*, 572 F.Supp. 659, 666 (D.S.C.1983), a personal injury suit brought pursuant to the Federal Tort Claims Act, this court did not reduce an award for future pain and suffering to present value. In so doing, this court cited South Carolina case law which reiterates the logic that damages for pain and suffering are indeterminate and cannot be measured monetarily.

Therefore, on closer analysis, there are no decisions based on South Carolina state law precedent which hold that future damages for pain and suffering are to be reduced to present value.[9] In the absence of state law precedent, this court must attempt to predict the determination that the state supreme court would reach if faced with the same question. *Phillips v. U.S.*, 575 F.Supp. 1309, 1314–1315 (D.S.C.1983).

In an attempt to resolve the dilemma presented, this court took judicial notice of expert testimony on economic factors which had been offered in other cases pending before it [10] and found that the rate of inflation and the discount rate for investment offset one another.[11] Furthermore, this court awarded future damages which are proportionally lower than the past damages award to reflect the probable diminishment of plaintiff's pain and suffering and mental anguish over time.

Therefore, this court, having fully considered the matter of future damages for pain and suffering and mental anguish and discount and inflation rates,[12] is satisfied

---

8. *See e.g., Edwards v. Lawton*, 244 S.C. 276, 136 S.E.2d 708 (1964); *Harper v. Bolton*, 239 S.C. 541, 124 S.E.2d 54 (1962).

9. There are South Carolina cases discussing excessive jury verdicts which suggest, in dicta, that awards for future pain and suffering are not subject to a reduction to present value; however, none explicitly hold on this issue. For example, in *Haseldon v. Atlantic Coast Line R. Co.*, 214 S.C. 410, 53 S.E.2d 60, at 66 (1949), the state supreme court recognizes a distinction between awards for future lost wages and for future pain and suffering when it states, "[i]n arriving at the verdict the jury could consider the loss of future earning power … the present value of all losses due to his impaired earning power … such physical pain and suffering as reasonably certain will of necessity result in the future …" (citations omitted). Yet, in a following paragraph, the court blurs the distinction by an assertion that the purchasing power of money is properly considered in awarding damages in a tort action.

10. Courts are divided on whether it is appropriate for the trier of fact to consider economic factors in a future damages award in the absence of an offer of proof. *See,* Annotation, *Effect of Anticipated Inflation on Damages for*

*Future Losses—Modern Cases,* 21 ALR 4th 21, §§ 4 and 5 (1983).

11. *Accord, Lucas v. United States,* 807 F.2d 414, 422 (5th Cir.1986) (applying Texas law, where the government provided no evidence to the contrary, the court utilized the total offset approach in determining that the discount rate and the inflation rate cancelled the effect of one another); *Dyer v. United States,* 551 F.Supp. 1266, 1280 (W.D.Mich.1982) (applying Michigan law, the court relied on a previous decision in which expert testimony supported the theory that the inflation rate and the discount rate totally offset one another.)

12. For a thorough discussion of case law pertinent to the reduction of awards for future damages to present value in actions brought pursuant to the Federal Tort Claims Act *see,* Jayson, L., *Handling Federal Tort Claims,* § 228.09.

*See also,* Annotation, *Propriety of Considering Effect of Inflation in Awarding Damages Under Federal Tort Claims Act,* 38 ALR Fed. 201 (1978); Annotation, *Effect of Anticipated Inflation on Damages for Future Losses—Modern Cases,* 21 ALR 4th 21 (1983).

that the award of future damages to this plaintiff is not excessive, but that it will appropriately compensate plaintiff for damages which are reasonably certain to accrue throughout the remainder of his life.

Accordingly, defendant's motion to alter or amend judgment is hereby denied.